**THOMPSON COBURN LLP**
**LUKAS SOSNICKI, CSB 295895**
**lsosnicki@thompsoncoburn.com**
**VIVIANA BOERO HEDRICK, CSB 239359**
**vhedrick@thompsoncoburn.com**
**10100 Santa Monica Blvd., Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI (MOHELA)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

| | |
|---|---|
| THOMAS HAGELBERG,<br><br>Plaintiff,<br><br>v.<br><br>HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and TRANS UNION, LLC,<br><br>Defendant. | CASE NO. 5:26-cv-00695-SSS-DTB<br><br>Hon. Sunshine Suzanne Sykes<br><br>**DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THOMAS HAGELBERG'S COMPLAINT**<br><br>Date: Friday, June 12, 2026<br>Time: 2:00 PM<br>Crtrm.: 2 |

## I. INTRODUCTION

Plaintiff's Opposition glaringly does not acknowledge his failure, and inexplicable refusal, to submit the requisite identity theft application mandated by the Higher Education Act ("HEA"). Instead, he reiterates his conclusory contention that he was the victim of identity theft and that the student loans at issue ("Loans") are not his.

Plaintiff's allegations that he was never a student borrower are insufficient to show his credit report is incomplete or inaccurate under the FCRA. Indeed, MOHELA's reporting of the undischarged Loans on Plaintiff's credit report cannot be incomplete or inaccurate as a matter of law where Plaintiff refused to take the necessary steps mandated under the HEA to obtain the relief he seeks. Plaintiff's claim for alleged violations of the FCRA therefore fails as MOHELA did not furnish any inaccurate information. His state law consumer claims fail for this same reason.

Further, MOHELA lacks the authority to decide that the Loans should be discharged and not reported on Plaintiff's credit report. The USDOE owns the Loans, and is the only entity that can make such a determination. Plaintiff's Complaint admits MOHELA conveyed this fact to him and asked him to follow the mandatory procedures established by the USDOE for applying for an identity theft discharge—filling out and submitting the identity theft application. He refused and, instead, brought this lawsuit.

Plaintiff's Complaint fails to state a valid claim against MOHELA where he failed to take the necessary first step and submit the USDOE's mandatory identity theft application. MOHELA respectfully requests this Court grant this Motion without leave to amend as no amendment can cure the Complaint's deficiencies.

## II. ARGUMENT

### A. The Complaint Fails to Plead a Claim Under The FCRA as MOHELA Did Not Furnish Any Inaccurate Information.

Plaintiff's Opposition demonstrates that his FCRA (15 U.S.C. § 1681 et seq.)

claim fails as a matter of law because he does not plausibly allege that MOHELA's reporting was incomplete or inaccurate.

As he acknowledges, the process for discharging Direct Loans on the basis of identity theft is governed by HEA regulations, codified at 34 C.F.R. § 685.215(c). Further, Plaintiff agrees that his allegations of identity theft required him to (1) certify that he did not sign the promissory note, (2) certify that he did not receive or benefit from the proceeds of the loan, and (3) provide certain supporting evidence to MOHELA such as a judicial determination of identity theft or a police report alleging theft. 34 C.F.R. § 685.215(c)(5).

Yet, Plaintiff failed to comply with the first step under HEA regulations. Specifically, "[t]o qualify for discharge under this paragraph, **the borrower <u>must</u> submit to the Secretary an application for discharge on a form approved by the Secretary**." 34 C.F.R. § 685.215(c) (emphasis added). Plaintiff did not do so—even though MOHELA notified him that he needed to submit this application. Complaint at ¶ 52. Plaintiff likewise admits in his Complaint that MOHELA asked him to "[p]lease submit 4 more signature samples, 2 within 1 year of the MPN [Master Promissory Note] date" along with the requisite application as mandated under 34 C.F.R. § 685.215(c). In response, instead of submitting the mandatory application, Plaintiff inexplicably chose to ignore the very HEA regulations he acknowledges apply to claims of identity theft.

This decision to *not* submit the requisite identity theft application does not convert otherwise accurate reporting into inaccuracies. MOHELA is not the owner of the Loans; the USDOE is. And as the loan holder, USDOE has specific regulations in place to cull through claims of identity theft and decide which have merit.

Here, MOHELA investigated Plaintiff's disputes based on the information it had—including the knowledge that no identity theft application was submitted or approved—and determined its reporting was valid. MOHELA sought to assist Plaintiff in completing FSA's identity theft documents, but, as his Opposition

concedes, Plaintiff failed to submit the requisite application. There can be no erroneous reporting or FCRA violation where Plaintiff's lack of cooperation with a federally-mandated process impeded the ability to establish any valid claim for identity theft. *Banks v. ACS Educ.*, 638 Fed.Appx. 587, 590 (9th Cir. 2016) ("[t]o state a claim under the FCRA, [a plaintiff is] required, at a minimum, to allege factual content showing an inaccuracy in his credit report."); *Mortimer v. JP Morgan Chase Bank*, No. C12-1936 CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012) (finding plaintiff's "claim insufficiently alleged because [plaintiff had] not asserted [defendant] reported incomplete or inaccurate information in the first place"). Plaintiff's allegations therefore do not support his FCRA claims.

In similar reporting contexts, courts have concluded that a plaintiff fails to sufficiently allege that his credit report is incomplete or inaccurate where certain findings must be made before a furnisher can be found to report incomplete or inaccurate information under the FCRA. For example, a furnisher that reports payment delinquencies during the pendency of bankruptcy proceedings does not report incomplete or inaccurate information while the bankruptcy proceedings are still ongoing. *Harrold v. Experian Info. Solutions*, No. C 12–2987 WHA, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012). Similarly, MOHELA does not report incomplete or inaccurate information under the FCRA where the USDOE's process to determine if a valid claim for identity theft exists has not even begun due to Plaintiff's failure to start the process. *Nissou-Rabban v. Cap. One Bank,* No. 15-CV-1673-JAH (RBB), 2016 WL 6804995, at *4 (S.D. Cal. Sept. 21, 2016) citing *Harrold*, 2012 WL 4097708, at *4 (stating that "reports of delinquencies in payment while bankruptcy proceeding are still ongoing is not 'incomplete or inaccurate' information"). As Plaintiff refused to submit the USDOE's mandatory application to commence such an inquiry, no inaccurate or incomplete reporting can exist.

Plaintiff cites to *Grigoryan v. Experian Info. Sols.,* 84 F. Supp. 3d 1044, 1061 (C.D. Cal. 2014) in an attempt to salvage his claims. *Grigoryan,* Plaintiff contends,

stands for the proposition that a CRA reports patently incorrect information when it does not correctly report according to the binding repayment terms between the plaintiff and the data furnisher. *Id*. Here, the binding repayment terms between Plaintiff and MOHELA are detailed in the Master Promissory Note ("MPN"). The MPN provides that the "terms of this MPN are determined in accordance with the Higher Education Act of 1965, as amended, our [the USDOE's] regulations, and other federal laws and regulations." Req. for Jud. Not. ("RJN"), Hedrick Decl., Ex. 1 at p. 3, 6 at ¶ 1; *Threshold Enterprises v. Pressed Juicery*, 445 F.Supp.3d 139, 146 (2020) (the Court can properly judicially notice the "existence and content" of a document relevant to the issues in a motion at the pleading stage).

The HEA's regulations, as codified in 34 CFR § 685.215, therefore govern the reporting of the Loans. Because 34 CFR § 685.215(c) mandates "the borrower must submit to the Secretary an application for discharge," MOHELA accurately reported the Loans as Plaintiff's. No other conclusion could follow where Plaintiff refused to submit the requisite identity theft application to have the Loans considered for discharge.

Plaintiff's other attempts to concoct inaccurate reporting based on the Complaint's deficient allegations likewise fail. Plaintiff cites to *Walker*, claiming that identity theft case was "nearly identical" to this one. But Plaintiff omits a material difference between *Walker* and his claims here. The plaintiff in *Walker* "submitted the identity theft packet to MOHELA by early February 2018." *Walker v. Higher Educ. Loan Auth. of the State of Missouri*, 2024 WL 3568576, at *1 (E.D. Cal. July 26, 2024). Plaintiff never submitted the identity theft application to MOHELA and USDOE therefore never had an opportunity to determine whether fraud existed.

Plaintiff also tries to differentiate *Petrou*, but to no avail. In *Petrou*, the plaintiff sought relief for alleged inaccurate or incomplete credit reporting based on his unadjudicated claims of identity theft where he had not sought discharge of his loans under the HEA. *Petrou v. Navient Corp.*, No. 17-CV-02033-BTM (JLB), 2018 WL

3020160, at *2–3 (S.D. Cal. June 15, 2018). Here, just like the plaintiff in *Petrou,* Plaintiff alleges inaccurate reporting where he too failed to follow the mandated process under the HEA to seek discharge of the Loans based on identity theft. *Id.*, at *2–3. And any version updates to 34 C.F.R. § 685.215 did not change the requirement that existed when *Petrou* was decided and that still exists now—that "[t]he inclusion of undischarged student loans in plaintiff's credit report ***cannot be incomplete or inaccurate***, particularly prior to any resolution of plaintiff's identity theft claim" by the USDOE. *Id.* at * 3 (emphasis added).

By not submitting the requisite USDOE-mandated application, Plaintiff did not receive, must less even start the process, to obtain the necessary false certification discharge from the USDOE. Hence, MOHELA's reporting of his undischarged federal Loans "cannot be incomplete or inaccurate prior to any resolution of Plaintiff's identity theft claim." *Id.*, at *3.

As the Complaint does not plausibly allege—and Plaintiff is unable to prove—facts establishing that MOHELA reported inaccurate information to the CRAs after conducting an investigation, the Court should dismiss the FCRA claim in its entirety. *See Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1039 (D. Minn. 2010) (holding "it is difficult to see how a plaintiff could prevail on a claim for damages' based on an unreasonable investigation of disputed data without a showing that the disputed information. . .was, in fact, inaccurate."); *Finley v. Capital One*, 2017 WL 1365207, *3 (N.D. Cal. Apr. 14, 2017) (granting motion for judgment on the pleadings on Section 1681s-2(b) claim where "the complaint does not identify what inaccurate information Capital One furnished to the CRAs"); *Heras v. Nelnet, Inc.*, 2017 WL 4586334, *5 (C.D. Cal. Apr. 28, 2017) (dismissing Section 1681s-2(b) claim, finding "plaintiff's failure to allege how the student loan information on his credit reports was inaccurate is [ ] fatal to his claims").

///

///

### B. Plaintiff's Claims Under Various State Consumer Protection Laws Lack Viability.

Plaintiff's lengthy discussion of field and express preemption misses the mark and fails to revitalize his legally deficient state law claims.

Servicers of federal debt, like MOHELA, are mandated by federal regulations to report certain information to credit reporting agencies. This includes MOHELA's pre-litigation conduct, such as reporting the Loans. This conduct preempts any state law that purports to "hinder or prohibit any activity taken by third-party debt collectors prior to litigation." *Brannan v. US Aid Funds, Inc.,* 94 F.3d 1260, 1263 (9th Cir. 1996).

Taking all of the allegations in the Complaint as true, Plaintiff fails to plead any viable state law claims against MOHELA precisely because the Loans have not been discharged by the USDOE. Demanding that MOHELA report the contrary—that the Loans are not Plaintiff's—would be the equivalent of requiring MOHELA to report *inaccurate* credit information. Such a demand or outcome is preempted. *Id.*; *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124, 1130 (S.D. Cal. 2005) ("State laws that impose duties with respect to the furnishing of negative credit information to credit reporting agencies may deter lenders from complying with section 1080a(a) and are therefore preempted.").

This is precisely why the HEA requires a borrower to comply with a specific procedure to obtain a discharge based on false certification. RJN, Ex. 1 at p. 13, ¶ 21; 34 C.F.R. § 685.215(c). As discussed above, Plaintiff was required to follow this procedure before demanding any discharge in court. *U.S. v. Hill*, 2013 WL 1150008 at *2, fn. 1 (N.D. Cal. 2013) *citing United States v. Wright*, 87 F.Supp.2d 464, 466 (D. Md. 2000) ("[A]n individual who believes a loan was fraudulently signed or obtained in her name may seek discharge from the Secretary of Education but must follow the procedures outlined in the Code of Federal Regulations" as "only the Secretary, not this Court, has discretion to discharge the loan"); *United States v. Hand*,

2017 WL 203010 at *2 (D. Mont. Jan. 18, 2017) ("[O]nly the Department of Education has the authority to discharge loans [insured under the HEA], not th[e] Court[s]"). He did not. As such, all of his claims fail.

Plaintiff argues his claim under the California Identity Theft Act ("CITA") is not preempted where MOHELA had a duty to investigate his indicia of identity theft. But Plaintiff confuses a diligent investigation with a bald acceptance of a claim that fails to abide by the mandatory process required by the USDOE and governed by 34 C.F.R. § 685.215. Plaintiff claimed the Loans were not his, and in response, MOHELA provided him with a copy of the identity theft application. Complaint ¶ 52. Plaintiff chose not to submit a completed application. As he did not take the necessary action to substantiate his claim, he cannot plausibly allege MOHELA's investigation under CITA was unreasonable. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) (in the Ninth Circuit, "[t]he pertinent question [in a furnisher liability case] is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.")

**1. <u>Plaintiff's Claims Under the Rosenthal Act Fail.</u>**

Plaintiff's Rosenthal Act claims also fail where they are entirely predicated on the federal FDCPA. Plaintiff alleges three violations of the Rosenthal Act, all of which rest entirely on California Civil Code § 1788.17, which is the provision that requires every "debt collector collecting or attempting to collect a consumer debt" to comply with the federal FDCPA, 15 U.S.C. §§ 1692b to 1692j; Complaint, at ¶¶ 55, 58-59. Because Plaintiff's entire Rosenthal Act claim is exclusively predicated on FDCPA violations, Plaintiff must establish MOHELA is a "debt collector" under the FDCPA's definition of that term. *Kemp v. Wells Fargo Bank, N.A.,* 2017 WL 4805567, at *8 (N.D. Cal. Oct. 25, 2017).

Under 15 U.S.C. § 1692a(6)(F)(iii), a person collecting a debt is not a "debt collector" if the collection activity "concerns a debt which was not in default at the

time it was obtained by such person." That is the case here and, indeed, Plaintiff's Complaint does not allege the loans were in default at the time MOHELA began servicing them. *See* Complaint, *passim*; *Jones v. Pennsylvania Higher Educ. Assistance Agency*, No. CV1600107RSWLAFMX, 2017 WL 4594078, at *10-11 (C.D. Cal. July 24, 2017).

Plaintiff responds that the Rosenthal Act is broader than the FDCPA and does not generally incorporate the FDCPA's definitions into all of its provisions. MOHELA agrees, as it does not contend the FDCPA's definition of "debt collector" generally applies to the Rosenthal Act. The FDCPA's definition *does apply* to claims expressly predicated on FDCPA violations, however. *Espinosa v. Trinity Fin. Servs.,* No. 217CV06310SVWAGRX, 2017 WL 6942662, at *3 (C.D. Cal. Oct. 19, 2017).

Plaintiff's attempt to distinguish *Espinoza*'s holding falls flat. The Central District of California's ruling in that case was not dicta, but specifically rejected the argument "that the California state version of the FDCPA, the Rosenthal Act, has a broader definition of 'debt collector' [in this context]." *Id*. In doing so, the court held that "[t]o the extent that Plaintiff alleges a separate allegation under California's Rosenthal Act, Civ. Code § 1788, the Rosenthal Act violations are premised on violations of the FDCPA." *Id.* Because the defendant in that case was "not a debt collector under the FDCPA," the court held "there is not (sic) predicate for alleged violations of the Rosenthal Act." *Id.* (holding that "Plaintiff's claims that Defendant is a debt collector and has violated the FDCPA or the Rosenthal Act are dismissed.").

Plaintiff's reliance on *Gaudin* also fails to salvage his claims. There, the Northern District of California's analysis revolved around whether the same common questions of law or fact existed for purposes of predominance in a putative class action. *Gaudin v. Saxon Mortg. Servs.,* 297 F.R.D. 417, 426-29 (N.D. Cal. 2013). Instead, the law is clear that "[w]here the Rosenthal Act claim relies on a violation of the FDCPA, the FDCPA's standard applies." *Rockridge Tr. v. Wells Fargo,* 985 F. Supp. 2d 1110, 1165 (N.D. Cal. 2013). As the entirety of Plaintiff's Rosenthal Act

claim relies on § 1788.17, it cannot survive dismissal because MOHELA is not a "debt collector" under the statute's definition of that term.

### 2. Plaintiff's Claims Under the CCRAA Fails.

To state a viable claim under the California Consumer Credit Reporting Agencies Act ("CCRAA"), Plaintiff had to sufficiently allege a statutory violation and lack of reasonable procedures, as well as actual damages. Cal. Civ. Code § 1785.31(a). His Complaint fails to plead these requirements.

The CCRAA prohibits a person from "furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). To determine whether a credit report is inaccurate, the same test applied under the FCRA is applied to the CCRAA. *Carvalho v. Equifax Information Services, LLC,* 629 F. 3d 876, 890–91 (9th Cir. 2010) ("[I]n considering whether [plaintiff]'s credit report was inaccurate within the meaning of the CCRAA, we are guided by *Gorman*'s 'patently incorrect or materially misleading' standard.").

In support of this claim, Plaintiff argues he pleaded sufficient facts where he alleges he was never a student loan borrower as demonstrated in his police report, such that MOHELA had to accept these facts as sufficient to raise "an inference." This is wide off the mark. Plaintiff fails to establish how this conclusory allegation supports a claim against MOHELA where Section 1785.25(g) provides an exception to liability if the furnisher maintained reasonable procedures, where MOHELA did as much by investigating Plaintiff's claim and providing him the mandated identity theft application that he refused to complete. Cal. Civ. Code § 1785.25(g). Just as with his FCRA claim, Plaintiff's CCRAA claim is unsupported because it is based on his erroneous belief that MOHELA had to accept his assertion that he was a victim of identity theft. Nothing in the FCRA or CCRAA requires such a result. In fact, Plaintiff needed to follow the HEA's procedures for obtaining a false certification discharge by filing out the USDOE's requisite identity theft application. He never did so and

never obtained a determination from the USDOE that the Loans were discharged (and indeed they are not). Plaintiff therefore has not, and cannot, demonstrate that any information reported by MOHELA on his credit report was inaccurate.

MOHELA's reporting that the Loans are valid and remain due and owing is not inaccurate where the USDOE has not discharged the Loans. Plaintiff therefore fails to plead any facts that MOHELA knew or should have known the information it furnished to the CRAs was inaccurate. *See Stinnett v. Navy Fed. Credit Union*, 2:24-cv-08964, 2025 WL 1199443 at *8 (C.D. Cal. Jan 28, 2025).

### C. <u>**Plaintiff Should Not Be Granted Leave to Amend.**</u>

Plaintiff's request for leave to amend should be denied because his own allegations demonstrate no facts exist that can save his claims. Plaintiff did not submit the application mandated by federal law in situations where, as here, an obligor claims he is an identity theft victim. Boiled down to its most basic, Plaintiff was required to submit the USDOE's identity theft application. He chose not to do so. He cannot now try to hold MOHELA liable for alleged inaccurate reporting where his Loans have not been discharged by the USDOE and are therefore valid by operation of law. There are no facts he can plead to change this fundamental flaw, making leave to amend an exercise in futility.

## III. <u>**CONCLUSION**</u>

For the foregoing reasons, MOHELA respectfully requests the Court grant its motion and dismiss each cause of action alleged against it without leave to amend.

DATED: May 29, 2026

**THOMPSON COBURN LLP**

By: [signature]

**LUKAS SOSNICKI**
**VIVIANA BOERO HEDRICK**
Attorneys for HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned counsel of record for Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA") certifies that this brief contains 3,285 words, which complies with the word limit of L.R. 11-6.1.

DATED: May 29, 2026

**THOMPSON COBURN LLP**

By: [signature]

**LUKAS SOSNICKI**
**VIVIANA BOERO HEDRICK**
Attorneys for HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI