UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00695-SSS-DTBx | Date | August 7, 2026 |
| Title | *Thomas Hagelberg v. Higher Education Loan Authority of the State of Missouri, et al.* | | |

Present: The Honorable SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART REQUEST FOR JUDICIAL NOTICE [DKTS. NO. 22, 23, 24]**

Before the Court is Defendant Higher Education Loan Authority of the State of Missouri's ("MOHELA") Motion to Dismiss Plaintiff Thomas Hagelberg's Complaint. [Dkt. No. 22, "Motion"]. Defendant Trans Union, LLC ("Trans Union") has joined the Motion. [Dkt. No. 24, "Joinder"]. MOHELA also requests judicial notice of a Master Promissory Note in support of the Motion. [Dkt. No. 23, "RJN"].

Having considered the parties' arguments, the relevant legal authority, and the record in this case, the Court **DENIES** the Motion, **DENIES** the Joinder, and **GRANTS IN PART** and **DENIES IN PART** the Request for Judicial Notice, as set forth below.

## I. BACKGROUND

Plaintiff Thomas Hagelberg alleges that he is a victim of identity theft. [Dkt. No. 1, "Compl." ¶ 24]. Sometime prior to October 2024, an unknown and unauthorized individual allegedly used Plaintiff's personal information to apply for and obtain two federal student loans in Plaintiff's name through the United States Department of Education ("USDOE") (the "Loans"). [*Id.* ¶ 26]. Plaintiff alleges that he has never applied for student loans and has never been a student in need of such loans. [*Id.* ¶ 29]. The Loans are serviced by MOHELA. [*Id.* ¶ 26].

On or about October 11, 2024, Plaintiff was notified that MOHELA had reported two student loan accounts (the "Accounts") on his Equifax credit report. [*Id.* ¶ 28]. Plaintiff filed a police report with the Corona Police Department, disputed the Accounts with Equifax, and Equifax deleted the Accounts on or about November 19, 2024. [*Id.* ¶¶ 30–32]. In January 2025, the Accounts appeared on Plaintiff's Trans Union credit report, Plaintiff filed a second police report, and Plaintiff mailed Trans Union a written dispute enclosing both police reports, which Plaintiff alleges was forwarded to MOHELA. [*Id.* ¶¶ 33–37]. Trans Union deleted the Accounts in June 2025. [*Id.* ¶ 38].

Plaintiff alleges that, sometime between June 2025 and September 2025, MOHELA furnished, and Trans Union published, information re-inserting the Accounts on Plaintiff's Trans Union credit report, followed by reported balance increases and a drop in Plaintiff's credit score. [*Id.* ¶¶ 39–41]. Plaintiff disputed the Accounts again, and Defendants verified them as accurate. [*Id.* ¶¶ 42–43, 48]. On or about January 16, 2026, Plaintiff sent MOHELA an Identity Theft Notification enclosing the police reports and requesting an investigation, which MOHELA received on or about January 23, 2026. [*Id.* ¶¶ 49–51].

On or about February 3, 2026, Plaintiff received a letter from MOHELA denying his "loan discharge request" because it "does not meet the necessary criteria for approval," and directing him to "complete the ID Theft application" and to "submit 4 more signature samples, 2 within 1 year of the MPN date." [*Id.* ¶ 52].

Plaintiff alleges that Defendant MOHELA has disregarded Plaintiff's past disputes and Identity Theft Notice and has instead maintained its interest in Plaintiff's money and property that is the product of identity theft by (1) continuing to report the fraudulent Accounts on Plaintiff's credit report(s), (2) continuing to attempt to collect on the alleged debt from Plaintiff, and (3) maintaining that

Plaintiff is responsible for paying the alleged debt despite knowing the Accounts were fraudulently opened.

The Complaint alleges four causes of action against MOHELA: (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.; (2) violation of the California Identity Theft Act ("CITA"), Cal. Civ. Code § 1798.92 et seq.; (3) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 et seq.; and (4) violation of the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq. [*See generally* Compl.]. As pleaded, only the FCRA and CCRAA claims are asserted against Trans Union. [*See* Dkt. No. 27, "Opp." at 2].

MOHELA moved to dismiss on April 30, 2026, supported by a Request for Judicial Notice. [Dkts. No. 22, 23]. Trans Union, which had previously answered the Complaint, filed a Notice of Joinder on May 8, 2026, adopting MOHELA's Motion in its entirety. [Dkts. No. 14, 24]. Plaintiff opposed on May 22, 2026, [Dkt. No. 27], and MOHELA replied on May 29, 2026, [Dkt. No. 28, "Reply"].

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim is proper under Rule 12(b)(6) when a plaintiff "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In analyzing a motion to dismiss, a court must accept as true all material factual allegations and draw all reasonable inferences in the non-moving party's favor. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). A court need not accept, however, "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). When reviewing a Rule 12(b)(6) motion, a court must consider the complaint in its entirety and any attached documents, documents incorporated by reference, or matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). If a complaint fails to state a plausible claim, a court should freely grant leave to amend under Federal Rule of Civil Procedure 15(a)(2) even if such a request was

not made, unless amendment would be futile. *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

## III. REQUEST FOR JUDICIAL NOTICE

In support of its Motion, MOHELA requests judicial notice of the Master Promissory Note ("MPN") dated August 15, 2024, purportedly executed in Plaintiff's name in connection with the Loans. [RJN at 2; "Hedrick Decl.," Ex. 1].

A court ruling on a Rule 12(b)(6) motion may consider documents incorporated by reference into the complaint and matters subject to judicial notice. *Tellabs*, 551 U.S. at 322; Fed. R. Evid. 201. A court may notice the existence and content of a document, but it "may not . . . take judicial notice of facts favorable to Defendants that could reasonably be disputed." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (cautioning that the "unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims").

The Court **GRANTS** the request in part. The Court takes judicial notice of the existence and content of the MPN, including that its terms recite that they are "determined in accordance with the Higher Education Act of 1965, as amended." The Court does not, however, take judicial notice of the MPN for the truth of any disputed fact, and in particular does not notice it to establish that Plaintiff signed, authorized, or is bound by the instrument. Those facts lie at the heart of this action, in which Plaintiff alleges the Loans were procured through identity theft and that he never applied for them. [Compl. ¶¶ 26, 29].

As Plaintiff himself frames the dispute, he "understands loan documents may exist," but "disputes that he authorized the loans." [Opp. at 15]. Taking judicial notice of the MPN to impute responsibility for its terms to Plaintiff would resolve that precise question against the non-moving party and improperly convert the Motion into one for summary judgment. *Khoja*, 899 F.3d at 998; *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). The Court thus considers the MPN only for its existence and content, and **DENIES** the request to the extent it seeks notice of disputed facts

## IV. DISCUSSION

MOHELA's Motion rests on a unifying premise: because the Loans have not been discharged by the USDOE, and because Plaintiff did not submit the identity-theft discharge application that MOHELA contends is a mandatory prerequisite under the Higher Education Act ("HEA") and its implementing regulations, MOHELA's reporting of the Loans "cannot be incomplete or inaccurate as a matter of law." [Motion at 9–14]. From that premise, MOHELA argues that the FCRA claim fails for want of an inaccuracy, that the state-law claims fail for the same reason and are separately preempted by the HEA, and that the Rosenthal Act claim fails because MOHELA is not a "debt collector." The Court addresses each claim in turn.

### A. Fair Credit Reporting Act Claim

To state a claim under the FCRA, a plaintiff must, "at a minimum, . . . allege factual content showing an inaccuracy in his credit report and that he communicated his disputes to the credit report agencies . . . ." *Banks v. ACS Educ.*, 638 F. App'x 587, 590 (9th Cir. 2016). Information is inaccurate for FCRA purposes when it is "patently incorrect" or "materially misleading." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). Information is "patently incorrect" when it is inaccurate "on its face." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012) (citation modified).

Here, accepting the Complaint's allegations as true, Plaintiff has plausibly alleged an inaccuracy. Plaintiff alleges that he was never a student, never applied for the Loans, and that the Loans do not belong to him at all. [Compl. ¶¶ 26, 29]. A report that a consumer owes a debt he never incurred, on an account he never opened, is patently incorrect on its face. Whether the Loans are in fact Plaintiff's, and whether MOHELA's reporting was therefore accurate, are quintessentially factual questions that cannot be resolved against Plaintiff on the pleadings.

MOHELA's contrary rule—that undischarged federal loans "cannot be incomplete or inaccurate as a matter of law" until the USDOE adjudicates a discharge application—rests principally on *Petrou v. Navient Corp.*, No. 17-CV-02033-BTM (JLB), 2018 WL 3020160 (S.D. Cal. June 15, 2018). *Petrou* is distinguishable. There, the loans at issue were Parent PLUS loans that the plaintiff's daughter had applied for in the plaintiff's name, and the accuracy dispute reduced to whether the plaintiff had authorized loans taken for the benefit of his actual child.

*Id.* at *2–3. Here, by contrast, Plaintiff alleges he was never a student and has no connection to the Loans whatsoever. This allegation of wholesale falsity, taken as true, states an inaccuracy in a way a mere "unadjudicated claim of identity theft, alone," did not in *Petrou*. *Id.* at *3.

The distinction is reinforced by *Walker v. Higher Education Loan Authority of the State of Missouri*, 2024 WL 3568576 (E.D. Cal. July 26, 2024), on which Plaintiff relies. *Walker* involved the same Defendant and a materially similar theory—that MOHELA reported a student loan account that did not belong to the plaintiff—and the court there found genuine issues of material fact as to whether MOHELA's reporting was accurate, declining to resolve the question even at summary judgment. If accuracy could not be decided as a matter of law on a developed record in *Walker*, it more so cannot be decided as a matter of law on the pleadings here. MOHELA's attempt to distinguish *Walker* on the ground that the *Walker* plaintiff submitted an identity-theft packet goes to the reasonableness of MOHELA's investigation and the ultimate merits, not to whether the Complaint plausibly alleges a facial inaccuracy.

MOHELA's remaining authorities do not compel dismissal. The bankruptcy-reporting cases MOHELA invokes hold that reporting a delinquency while a bankruptcy is pending is not inaccurate, but they turn on the premise that the reported information was true when furnished; they do not address a debt the consumer alleges is not his at all. *See Nissou-Rabban v. Cap. One Bank (USA), N.A.*, No. 15-CV-1673-JAH (RBB), 2016 WL 6804995, at *4 (S.D. Cal. Sept. 21, 2016).

Nor does MOHELA's observation that only the USDOE may discharge the Loans establish accuracy. Whether MOHELA may unilaterally discharge the Loans is a different question from whether the Loans are Plaintiff's in the first place, and it is the latter question that determines accuracy under the FCRA. Under MOHELA's proposed theory, a furnisher could report a loan against a person who alleges he never borrowed, decline to correct it after notice, and claim accuracy as a matter of law so long as no discharge had issued, however facially fraudulent the reporting was alleged to be. That rule would immunize a furnisher from the FCRA's reinvestigation duty in virtually every student-loan identity-theft case, regardless of the strength of the consumer's allegations, and would undermine the statute's protections precisely where a consumer alleges his identity was stolen. This is a result the FCRA does not support.

MOHELA separately contends that Plaintiff's FCRA claim fails because he did not first complete the HEA's administrative discharge process, and that his sole

remedy for any denial would be an action to set aside the Secretary's determination rather than a suit against MOHELA. [Motion at 15–17]. The Court is not persuaded at the pleading stage. The FCRA imposes no requirement that a consumer exhaust an administrative remedy before asserting a claim against a furnisher, and MOHELA identifies no provision of the FCRA or of the HEA conditioning a furnisher's obligations under 15 U.S.C. § 1681s-2(b) on the prior exhaustion of a discharge application. MOHELA's authorities establish only that the Secretary of Education has exclusive authority to discharge a federal loan, that no private right of action exists under 20 U.S.C. § 1087, and that a borrower who seeks a discharge must follow the procedures the HEA prescribes. *See United States v. Lopez*, No. 12-CV-02441 NJV, 2013 WL 12090619, at *3 (N.D. Cal. May 28, 2013); *United States v. Hill*, No. C-11-6498 EMC, 2013 WL 1150008, at *2 & n.1 (N.D. Cal. 2013); *United States v. Hand*, No. CV 15-96-H-CCL, 2017 WL 203010, at *2 (D. Mont. Jan. 18, 2017). None of those decisions holds that a consumer must obtain the discharge of a debt he alleges was never his before he may sue a furnisher under the FCRA for reporting that debt as his.

MOHELA's premise—that Plaintiff seeks to compel a discharge or to obtain review of the denial of one—misapprehends the claim. Plaintiff does not ask the Court to discharge the Loans or to set aside any determination of the Secretary; he asks that MOHELA be held liable under the FCRA for furnishing information he contends is inaccurate and for failing to reasonably investigate his disputes. Whether the Loans are Plaintiff's at all is logically antecedent to, and independent of, whether the USDOE would grant a discharge: a discharge presupposes a valid loan to be forgiven, whereas Plaintiff's theory is that no loan of his ever existed. A consumer need not obtain the discharge of a debt he alleges was never his in order to plead that reporting it as his is patently incorrect. *Carvalho*, 629 F.3d at 890. To the extent MOHELA proposes a primary jurisdiction argument, it fares no better because whether the Loans belong to Plaintiff is an ordinary factual question courts are equipped to resolve, not one committed to the USDOE's specialized competence. The availability of the discharge process may ultimately bear on the reasonableness of MOHELA's investigation, but that is a merits question unsuited to resolution on the pleadings.

As such, because Plaintiff has plausibly alleged an inaccuracy, and because whether MOHELA's reinvestigation was reasonable is a factual matter unsuited to resolution on a motion to dismiss, the Court **DENIES** the Motion as to Claim 1.

### B. HEA Preemption of the State Law Claims

MOHELA next argues that the HEA preempts Plaintiff's state-law claims under *Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260 (9th Cir. 1996), and *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124 (S.D. Cal. 2005). "Courts start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation modified); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

The Ninth Circuit has held that field preemption does not apply to the HEA. *Chae v. SLM Corp.*, 593 F.3d 936, 941–42 (9th Cir. 2010). And MOHELA identifies no express preemption provision reaching state credit-reporting or identity-theft law. *See id.* The Motion therefore turns on conflict preemption, which arises where compliance with both state and federal law is impossible or where state law "stands as an obstacle to the accomplishment . . . of the full purposes and objectives of Congress." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1152 (9th Cir. 2000).

Here, at the pleading stage, MOHELA has not shown conflict preemption. The HEA provision requiring servicers to report loan information to consumer reporting agencies simultaneously requires that the information be accurate, providing that "no information is disclosed . . . unless its accuracy and completeness have been verified," and that nothing in the subsection "shall be construed to affect any otherwise applicable provision of the Fair Credit Reporting Act." 20 U.S.C. §§ 1080a(a), (c). Plaintiff's state-law claims, construed favorably, seek to enforce that same norm of accuracy: they allege that MOHELA reported a debt belonging to a person who was never a borrower. It is not impossible for MOHELA to comply both with its federal obligation to report verified, accurate information and with state laws prohibiting the knowing furnishing of inaccurate information, and enforcing accuracy does not obstruct the HEA's objectives.

*Brannan* and *Pirouzian* do not require a different result at this stage. *Brannan* preempted a state law that would have "prohibit[ed], restrict[ed], or impose[d] burdens" on the sequence of pre-litigation collection contacts prescribed by federal regulation, and *Pirouzian* concerned the reporting of a borrower's past-due payments. *Brannan*, 94 F.3d at 1266; *Pirouzian*, 396 F. Supp. 2d at 1130. In each, the plaintiff's status as the borrower was undisputed, and the dispute concerned collection or servicing practices. Here, Plaintiff disputes that he is a borrower at all. A state-law duty not to report a debt as belonging to someone who never incurred it

does not "hinder or prohibit" federally required reporting of genuine borrower information; it aligns with the accuracy verification the HEA itself commands. *See* 20 U.S.C. § 1080a(c).

The Court thus declines to find on the pleadings that the HEA preempts Plaintiff's CITA, Rosenthal Act, or CCRAA claims, and **DENIES** the Motion on preemption grounds. This ruling is without prejudice to MOHELA renewing a preemption defense on a developed record, particularly as to any theory that would require MOHELA affirmatively to report the Loans as discharged, or as not Plaintiff's, before any USDOE determination.

**C. Rosenthal Act Claim**

MOHELA separately argues that Plaintiff's Rosenthal Act claim fails because MOHELA is not a "debt collector." Plaintiff's Rosenthal Act claim rests on California Civil Code section 1788.17, which requires every "debt collector collecting or attempting to collect a consumer debt" to comply with the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692b to 1692j. [Motion at 14–15].

MOHELA argues that, because the claim is predicated on the FDCPA's substantive provisions, the FDCPA's definition of "debt collector" controls, and that under 15 U.S.C. § 1692a(6)(F)(iii) of the FDCPA, a servicer of a debt that was not in default when it was obtained is not a "debt collector." *See Espinosa v. Trinity Fin. Servs., LLC*, No. 2:17-cv-06310-SVW-AGRx, 2017 WL 6942662, at *3 (C.D. Cal. Oct. 19, 2017); *Kemp v. Wells Fargo Bank, N.A.*, No. 17-cv-01259-MEJ, 2017 WL 4805567, at *8 (N.D. Cal. Oct. 25, 2017). Plaintiff responds that the Rosenthal Act supplies its own, broader definition of "debt collector," Cal. Civ. Code § 1788.2, which does not incorporate the FDCPA's default-status exclusion.

The Court agrees with Plaintiff that dismissal is not warranted at this stage. California Civil Code section 1788.17 incorporates by reference the FDCPA's substantive provisions at sections 1692b through 1692j. It does not incorporate section 1692a, where the FDCPA's exclusionary definition of "debt collector" resides. *See* 15 U.S.C. § 1692a(6)(F)(iii). Who qualifies as a "debt collector" subject to the Rosenthal Act is instead governed by the Rosenthal Act's own definition, which reaches "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in" debt collection, without regard to whether the debt was in default when acquired. Cal. Civ. Code § 1788.2(b)–(c). Plaintiff

alleges MOHELA sought to collect "money . . . alleged to be due or owing" from him, which suffices at the pleading stage. [Compl. ¶¶ 55, 58–59].

MOHELA's authorities do not compel a contrary conclusion on a motion to dismiss. Whether *Espinosa*'s treatment of the interaction between the two statutes is properly read as a holding or as dicta is contested, and as shown by the parties' briefings, district courts have differed on whether the FDCPA's definition of "debt collector" governs a Rosenthal Act claim brought under section 1788.17. Given that division, the plaintiff-favorable posture of Rule 12(b)(6), and the more natural reading of the statutory text—which incorporates sections 1692b through 1692j but not section 1692a—this Court declines to resolve this unsettled question of state law against the non-moving party at the pleading stage. The Court therefore **DENIES** the Motion as to the Rosenthal Act Claim.

### D. Consumer Credit Reporting Agencies Act Claim

The CCRAA prohibits a person from furnishing information to a consumer credit reporting agency that "the person knows or should know . . . is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). The same accuracy standard that governs the FCRA governs the CCRAA. *Carvalho*, 629 F.3d at 890–91 ("[I]n considering whether [the] credit report was inaccurate within the meaning of the CCRAA, we are guided by *Gorman*'s "patently incorrect or materially misleading" standard."). For the reasons stated as to the FCRA claim, Plaintiff has plausibly alleged that MOHELA furnished information it knew or should have known was inaccurate—namely, that Plaintiff was a borrower on Loans he alleges he never obtained. [Compl. ¶¶ 29, 49, 56–57].

MOHELA's reliance on the CCRAA's "reasonable procedures" provision does not warrant dismissal. That provision affords a furnisher a defense only where the furnisher "establishes by a preponderance of the evidence" that it "maintained reasonable procedures" at the time of the alleged violation. Cal. Civ. Code § 1785.25(g). Whether MOHELA maintained reasonable procedures, and whether its investigation of Plaintiff's repeated disputes and police reports was reasonable, presents a factual question on which MOHELA bears the burden, and it cannot be resolved in MOHELA's favor on the pleadings. The Court thus **DENIES** the Motion as to the CCRAA Claim.

### E. California Identity Theft Act Claim

MOHELA's challenge to Plaintiff's CITA Claim rests on the same theories addressed above—that MOHELA's reporting cannot be inaccurate because the Loans are undischarged, and that the claim is preempted by the HEA. The Court has rejected both theories at the pleading stage for the reasons set forth in Sections IV.A and IV.B above. Accepting as true Plaintiff's allegations that he is an identity-theft victim, that he furnished MOHELA police reports and an identity-theft notification, and that MOHELA continued to treat the Loans as valid and collectible obligations of Plaintiff, the Complaint states a claim under CITA sufficient to survive dismissal. [Compl. ¶¶ 24, 49–51]. The Court thus **DENIES** the Motion as to the CITA Claim.

### F. Trans Union Joinder

Trans Union joins MOHELA's Motion in its entirety, contending that the grounds for dismissal apply equally to the claims against it. [Joinder at 1–2]. Because Trans Union answered the Complaint before filing its Joinder, a motion under Rule 12(b)(6) is no longer available to it, and the Court construes the Joinder as a motion for judgment on the pleadings under Rule 12(c). *See* Fed. R. Civ. P. 12(c), 12(h)(2). The standard governing a Rule 12(c) motion is the same as that governing a motion under Rule 12(b)(6). So construed, the Court **GRANTS** the Joinder to the extent it treats Trans Union's arguments as presented, but **DENIES** the Motion as to Trans Union.

Because the Court denies MOHELA's Motion in full, it fails as to Trans Union as well. In any event, the bulk of MOHELA's arguments are furnisher-specific and have no application to Trans Union, which is a consumer reporting agency, not a furnisher of information or a servicer of the Loans. Trans Union is not subject to the HEA's servicer-reporting scheme, it is not alleged to be a debt collector under the Rosenthal Act, and, as pleaded, it is named only under the FCRA and CCRAA. [*See* Opp. at 2]. A blanket joinder adopting a co-defendant's furnisher-specific arguments wholesale does not carry Trans Union's burden of showing that the FCRA and CCRAA claims against it fail as a matter of law. Trans Union having already answered the Complaint, pleadings are closed as to it, the case is at issue, and no further responsive pleading is required. [Dkt. No. 14].

///

///

## V. CONCLUSION

For the foregoing reasons, the Court rules as follows:

The Request for Judicial Notice is **GRANTED IN PART** and **DENIED IN PART**. [Dkt. No.23]. The Court takes judicial notice of the existence and content of the Master Promissory Note, but not of any disputed fact, including whether Plaintiff signed, authorized, or is bound by it.

MOHELA's Motion to Dismiss is **DENIED** as to all four causes of action. [Dkt. No. 22]. Trans Union's Joinder is **GRANTED**; the Motion, as joined by Trans Union and construed as a motion for judgment on the pleadings under Rule 12(c), is **DENIED**. [Dkt. No. 24].

MOHELA must file its answer to the Complaint within **fourteen (14) days** of the date of this Order. Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**